AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 1:17MJ-400
THE CELLULAR TELEPHONE )
ASSIGNED CALL NUMBER )
513-295-1880 (Sprint) )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

A CELLULAR TELEPHONE ASSIGNED CALL NUMBER 513-295-1880 (Sprint)

located in the  Southern  District of  Ohio , there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENTS A AND B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841 and 846 | Conspiracy to Possess and Possession of a Controlled Substance with the Intent to Distribute |

The application is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

☑ Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Tyler D. Field, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/8/17

_____
*Judge's signature*

City and state:  Cincinnati, Ohio

Hon. Karen L. Litkovitz, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER 513-295-1880 (Sprint) | CASE NO. <br> UNDER SEAL |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Tyler D. Field, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the locations of the cellular telephones assigned call number **513-295-1880** (the "**Subject Telephone**"), whose service provider is Sprint, a wireless provider headquartered 6480 Sprint Parkway, Overland Park, KS 66251. The targeted cell phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent ("SA") of the Drug Enforcement Administration ("DEA") and have been so employed since March 2016. I also serve as a U.S. Army Military Police Captain in the Indiana Army National Guard and have over fifteen years of service. Prior to being employed with the DEA, I was employed as a police officer for the Town of Bridgewater, Massachusetts for over three years. I have graduated from the U.S. Army Military Police School, Plymouth Police Academy, and DEA Basic Agent Academy. During these courses I received training in the investigation of offenses involving controlled substances. As a Special Agent of the DEA, my duties and responsibilities have included conducting criminal investigations for violations of federal law, particularly those found in Title 21 and Title 18 of the United States

Code. As a DEA agent, I have participated in approximately fifteen criminal investigations seeking evidence of violations of the Federal Controlled Substances Act (Title 21 of the United States Code).

3. I am currently assigned to the Cincinnati Resident Office of the DEA. I have received specialized training from the DEA, including the 18-week Basic Agent Training course. This training focused on methods of unlawful drug trafficking; the identification of controlled substances; surveillance; undercover operations; confidential source management; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activity; and, the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets used or intended to be used to facilitate the drug violations.

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 United States Code, Sections 841(a)(1) and 846 have been committed, are being committed, and will be committed by Keysean DICKEY and other as-yet unknown individuals. I believe there is probable cause to believe that the **Subject Telephone** is being used in furtherance of the aforementioned crimes and that there is also probable cause to believe that the location of the **Subject Telephone** will constitute evidence of those criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

## THE RELEVANT FACTS

6. On May 30, 2017 at approximately 6:45 p.m., the Honorable Susan J. Dlott, United States District Judge in the Southern District of Ohio, signed an order under case 1:17MC-20

2

authorizing the interception of wire and electronic communications over telephone number 513-238-1049 (hereinafter referred to as DICKEY's telephone), a telephone used by Keysean DICKEY.

7. On June 2, 2017 at approximately 6 p.m., agents intercepted a telephone call placed by an unidentified male (UM0880) using 646-670-0880 to DICKEY's telephone. During the call, DICKEY told UM0880 to continue down Williamsburg Road. Approximately four minutes later, UM0080 called DICKEY and told DICKEY "This is me." Based on my training, experience, discussions with other law enforcement officers/agents and other information obtained in this investigation, I believe that DICKEY was giving UM0080 directions to a stash house for the DICKEY DTO. I further believe that when UM0080 told DICKEY "This is me," UM0080 was telling DICKEY that UM0080 had arrived at DICKEY's location. Because DICKEY had to direct UM0080 to the suspected stash house, I believe that UM0080 had never been there before. Consequently, I do not believe that UM0080 is a dealer who distributes heroin/fentanyl to the DICKEY DTO's customers. Because UM0080 was meeting DICKEY at a suspected stash house, I believe that UM0080 is involved in providing heroin/fentanyl to the DICKEY DTO.

8. At approximately 6:09 p.m., I obtained geo-location information that indicated DICKEY's telephone was within 3,502 meters of the intersection of Banbury Street and W. Galbraith Road in Cincinnati. The intersection of Banbury Street and W. Galbraith Road is approximately 900 meters from 4502 Williamsburg Road, the location of the DICKEY DTO's suspected stash location. Consequently, I believe that DICKEY was located at the suspected stash location for the DICKEY DTO.

9. On June 6, 2017 at approximately 9:33 p.m., agents intercepted a telephone call placed by UM0880 using 646-670-0880 to DICKEY's telephone. During the call, DICKEY told UM0880 that DICKEY would call him from a different telephone number. According to the call

3

records for UM0880's telephone UM0880 received a telephone call from the number **513-295-1880 (Subject Telephone)** at approximately 10:23 p.m.

10. On June 7, 2017, I requested subscriber and call records for the **Subject Telephone** pursuant to an administrative subpoena. According to the subscriber records, the **Subject Telephone** was subscribed to Michael Jackson at 4900 Reading Road on June 6, 2017. I believe that Michael Jackson is a fictitious name. According to the Hamilton County Auditor on-line Database, 4900 Reading Road is an empty plot of land. Based on my training, experience, and discussions with other law enforcement officers/agents, I know that drug traffickers often use recently subscriber telephones subscribed to fictitious names and addresses.

11. According to the call records, since it was subscribed, the **Subject Telephone** was used to make two phone calls. On June 6, 2017, at approximately 3:30 p.m. the **Subject Telephone** called DICKEY's telephone. The call placed to DICKEY's telephone was intercepted, however the call was terminated after only a few seconds and was not answered by DICKEY. I believe that that call was made so that the **Subject Telephone** could be stored in DICKEY's telephone's contact list. The only other call was the aforementioned call that was placed to UM0880's telephone.

12. Based on my training, experience, and discussions with other law enforcement officers/ agents, the fact that the **Subject Telephone** was recently subscribed using a fictitious name and address, the fact that it was only used to call DICKEY's telephone and UM0880's telephone, and my belief that UM0880 is involved in providing heroin/fentanyl to the DICKEY DTO, I believe that the **Subject Telephone** is being used in furtherance of the DICKEY DTO conspiracy. Based on the fact that the **Subject Telephone** called UM0880's telephone after DICKEY told UM0880 that DICKEY would call from a different telephone, and my belief that the **Subject Telephone** called DICKEY's phone for the sole purpose of the **Subject Telephone**

4

to be stored as a contact in DICKEY's telephone, I further believe that DICKEY is the user of the **Subject Telephone.**

13. Based on the information set forth in this affidavit, I believe that there is probable cause to believe that the **Subject Telephone** is engaged in ongoing criminal activity, specifically in violation of Title 21 U.S.C. §§ 841(a)(1) and 846. I believe there is probable cause that locating the general geographical position and movements of the **Subject Telephone** will assist law enforcement in identifying, dismantling and disrupting the DICKEY DTO's illegal drug dealing activities.

14. In my training and experience, I have learned that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

15. Based on my training and experience, I know that wireless phone companies can collect E-911 Phase II data about the location of the target cell phone, including by initiating a

5

signal to determine the location of the target cell phone on Sprint's network or with such other reference points as may be reasonably available.

16. Based on my training and experience, I know that wireless phone companies can also collect cell-site data about the target cell phone.

## AUTHORIZATION REQUEST

17. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

18. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscribers or users of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give those people an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

19. I further request that the Court direct the Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint services, including

6

by initiating a signal to determine the location of the target cell phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

20. I further request that the Court authorize the government to install and operate a cell-site simulator to obtain dialing, routing, addressing, and signaling information from the target cell phones to determine the locations of the target cell phones.

21. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the target cell phone outside of daytime hours. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is probable cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

Respectfully submitted,

_____
Tyler D. Field
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me on this 8 day of June 2017.

_____
HONORABLE KAREN L. LITKOVITZ
UNITED STATES MAGISTRATE JUDGE

7

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number **513-295-1880**, whose wireless service provider is Sprint, a wireless provider headquartered 6480 Sprint Parkway, Overland Park, KS 66251.

2. Information about the location of the cellular telephone assigned call number **513-295-1880** that is within the possession, custody, or control of Sprint including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

All information about the location of the target cell phone described in Attachment A for a period of thirty days, during all times of day and night. "Information about the location of the target cell phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint, Sprint is required to disclose the Location Information to the government. In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint services, including by initiating a signal to determine the location of the target cell phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance. In addition the government may initiate a signal to determine the location of the target cell phone.

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).